Filed 12/4/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ALEX SALAZAR, | B343420 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 24PSCV02047) |
| v. | |
| MAJESTIC REALTY CO. et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Christian R. Gullon, Judge. Reversed with directions.

Law Office of D. Gill Sperlein and D. Gill Sperlein for Plaintiff and Appellant.

Randazza Legal Group, Marc J. Randazza and Alex J. Shepard for Amicus Curiae First Amendment Lawyers Association on behalf of Plaintiff and Appellant.

Glaser Weil Fink Howard Jordan & Shapiro, Peter C. Sheridan and Steven Basileo for Defendants and Respondents.

_____

Plaintiff Alex Salazar appeals from the denial of a preliminary injunction against defendants and respondents Majestic Realty Co., Redlands Joint Venture, LLC, and Mountain Grove Partners, LLC. Defendants own and operate Citrus Plaza and Mountain Grove, two adjoining shopping centers (the Centers).

Plaintiff, an activist, requested permission to distribute leaflets at the Centers proclaiming his view that "[m]en are not legally and financially responsible for supporting a child" born outside of marriage, and inviting the public to attend a meeting on the subject. Pursuant to the Centers' policy prohibiting expressive activity on their property, including leafletting, the Centers declined plaintiff's request. Plaintiff sued, contending that under _Robins v. Pruneyard Shopping Center_ (1979) 23 Cal.3d 899 (_Pruneyard_), he has the right to leaflet at private shopping centers under the California Constitution's liberty of speech provision. He then moved for a preliminary injunction.

The trial court found that under _Pruneyard_, "a blanket ban [on leafletting] is unconstitutional," and the balance of harms favored plaintiff. The court nonetheless concluded plaintiff was unlikely to prevail on the merits and denied the preliminary injunction. The court relied on plaintiff's deposition testimony, in which, when asked where in the Centers he would like to leaflet, plaintiff identified areas near the entrances of three businesses within the Centers. The trial court cited case law holding that _Pruneyard_ does not apply to store entrances and the area surrounding them. The court further found plaintiff's leaflets offered unlicensed legal advice, namely that men do not have to

2

comply with their child support obligations, and thus, were constitutionally unprotected.

The trial court erred. Case law establishes plaintiff has standing to raise a facial challenge to the Centers' restriction on free expression without demonstrating his own expression is protected. Alternatively, plaintiff has demonstrated his own constitutional injury. We disagree with the trial court that plaintiff's deposition testimony limits his challenge to being allowed to leaflet at store entrances, nor do his leaflets constitute unlicensed legal advice. Accordingly, plaintiff may invoke *Pruneyard*, under which the Centers' total ban is unconstitutional. Also unconstitutional is the Centers' requirement that persons obtain permission before engaging in expressive activity, which lacks objective criteria guiding the Centers' discretion in applying the permit requirement.

Defendants dispute the trial court's finding that the balance of harms favored plaintiff. We conclude the trial court did not abuse its discretion in so finding.

Accordingly, we reverse the order denying plaintiff's request for a preliminary injunction and direct the trial court to grant a preliminary injunction enjoining defendants from enforcing the total ban on expressive activity and the unfettered permitting requirement at the Centers. Consistent with *Pruneyard*, defendants may impose appropriate time, place, and manner restrictions on expressive activity, but they may not ban it entirely.

# BACKGROUND

### 1.   *Plaintiff's expressive activity*

Plaintiff identifies himself as "an activist with a strong interest in increasing dialog about men's reproductive rights and responsibilities." As described by the trial court, "Plaintiff seeks to explain that men have a legal right to decide whether to pay child support for a child born outside of marriage, a movement which he has coined men's eMANcipation." Plaintiff wishes to "bring[ ] people together to discuss the issue," and has "created a 12-point, hour-long[ ] presentation on the topic."

To inform people of the meetings at which he intends to give his presentation, plaintiff distributes flyers at shopping centers.[1] Two such flyers are in the record. The first states, "Men are not owned by women through their bodies!" (Boldface & some capitalization omitted.) It continues, "Men are not legally and financially responsible for supporting a child that a woman chooses to have, for women's reproductive decisions that only a woman can make with her female body, and for what women do with their bodies. And a man has the right to choose to support a child for any child born outside of marriage. [¶] Learn about men's eMANcipation and join the fight[,] men. Contact Alex Salazar at [e-mail address omitted]. I hold meetings in Riverside. Email me for meeting details." The bottom of the flyer states, "Learn the truth. Learn your rights. Learn that you are not owned by women through their bodies."

---

[1] At his deposition, plaintiff testified he had distributed his flyers on seven occasions, but had yet to give his presentation because no one had contacted him in response to his flyers.

The second flyer largely mirrors the first apart from many misspellings.[2]  The second flyer provides additional information about the meetings plaintiff is offering, stating, "I give a [one-hour] pre[sen]ta[t]ion in Riverside to teach men that they do have the r[e]pr[o]ductive right to choo[s]e too and why they are not r[e]sponsible for supporting a woman's r[e]pr[o]ductive d[ec]i[s]ion to have a child."

## 2. *Complaint*

Defendants own and operate the Centers, which are adjacent to one another.  The Centers prohibit " 'soliciting, petitions, polling, . . . peddling, political causes, [and] distribution of pamphlets' " on their property, and have signs at each entrance so stating.  The signs further state, "All offenders will be prosecuted to the fullest extent of the law," and the prohibitions are "[e]nforced by Redlands Police Dept."  (Some capitalization omitted.)

The Centers also have a code of conduct, including section 34, which states, "All non-commercial expressive activity must be in compliance with the Centers' rules for such activities including, but not limited to, obtaining the prior written permission of the Centers' management."  Defendants acknowledge in their briefing that, to the extent section 34 suggests the Centers might grant permission for noncommercial

---

[2]  In opposition to the preliminary injunction motion, defendants submitted a declaration from Paul Bresenden, the owner of a marketing agency, who opined plaintiff had deliberately misspelled words in the second flyer "to avoid censorship algorithms used by social media sites to filter out offensive words or ideas."

expressive activity, they in fact never do, instead imposing a total ban on expressive activity.

Plaintiff contacted the Centers and requested permission to distribute his flyers at the Centers. The Centers denied the request given their policy prohibiting political activity and distribution of leaflets. Plaintiff repeated his request through counsel and the Centers again denied his request.

Plaintiff then sued defendants, followed shortly by a motion for a preliminary injunction. The parties agreed to take limited discovery, after which plaintiff filed his first amended complaint, the operative complaint in this appeal.

The first amended complaint alleges the Centers' policy prohibiting "expressive activity, including distributing flyers and gathering signatures," violates the California Constitution's liberty of speech provision. The complaint further alleges section 34 of the Centers' code of conduct violates the California Constitution, both "facially and as applied to Plaintiff," by conferring "unfettered discretion" on the Centers whether to allow expressive activity. The complaint prays for a declaration that the Centers' ban on expressive activity is unconstitutional, as applied and on its face, as well as an injunction against defendants' enforcing the ban, and compensatory or, alternatively, nominal damages.[3]

---

[3] The first amended complaint also alleged a violation of the Unfair Competition Law (Bus. & Prof. Code, § 17200) and sought punitive damages, but plaintiff later dismissed those portions of the complaint, which are not at issue in this appeal.

### 3.    *Motion for preliminary injunction*

After filing the first amended complaint, plaintiff withdrew his first motion for a preliminary injunction and filed a second motion for preliminary injunction prohibiting defendants from enforcing a total ban on free speech at the Centers.  Plaintiff contended the Centers were public fora under *Pruneyard*, and the Centers' policies forbidding expressive activity and giving their management unbridled discretion to determine what expressive activity to allow therefore were unconstitutional, facially and as applied to plaintiff.  He argued the balance of harms favored him because, inter alia, courts had held the loss of free speech rights constitutes an irreparable injury.

Defendants opposed the motion.  Defendants characterized the injunction sought by plaintiff as mandatory, as opposed to prohibitory, and therefore, should not be granted except in the extreme case, which the instant case is not.

Defendants cited plaintiff's deposition testimony, where, in response to questions about where within the Centers he wished to distribute his flyers, he answered he wished to do so within 5 or 10 feet of the entrances of a Target, a movie theater, and a gym.  Defendants argued that under post-*Pruneyard* authority, "[T]he apron and perimeter areas at the entrances and exits of individual stores . . . are *not* public fora and risk interfering with 'normal business operations.'  [Citations.]"  (Boldface omitted.)  Defendants contended *Pruneyard*, which concerned a shopping center's "central courtyard," therefore was distinguishable.  Defendants further contended *Pruneyard* was distinguishable because the free speech at issue in that case, soliciting signatures, was less intrusive than plaintiff's proposed activity of

7

"approach[ing] unreceptive shopping center guests at store entrances and hand[ing] them leaflets."

Defendants also argued the balancing test applied in *Pruneyard* between the competing interests of society and the owner of the shopping center would yield a different result today, when the Internet has overtaken the shopping center as the "new public square," and leafletting "is an ineffective and outdated advocacy method."

Defendants additionally contended plaintiff's particular speech was not constitutionally protected because he was inciting lawless action by encouraging men not to meet their child support obligations, and "disseminat[ing] legal advice without a law license." To the extent plaintiff could establish his speech was entitled to constitutional protection, defendants argued a restriction on leafletting nonetheless was a reasonable limitation given the availability of other means of expression such as through the Internet, and defendants' economic interest in "protect[ing] the guest experience at the Center[s]."

Defendants contended an order compelling defendants to allow plaintiff to leaflet would be unconstitutional because defendants were not state actors, the order would constitute an uncompensated taking, and the order would infringe on defendants' own right to free speech because plaintiff's message conflicted with "Defendants' and their tenants' own marketing message."

Finally, defendants asserted the balance of hardships favored them, because plaintiff's proposed method of speech was ineffective at accomplishing his goals, and allowing him to leaflet would "harm the economic interests of the Centers and tenants."

In reply, plaintiff argued he was seeking a prohibitory, not mandatory, injunction. He contended it was irrelevant where he preferred to leaflet because the Centers would not let him leaflet anywhere, in contravention of *Pruneyard*. He disagreed with defendants' assertion that the Internet or other historical developments undercut *Pruneyard*. He argued his flyers did not incite imminent lawless action, and thus remained constitutionally protected, nor did the information in his flyers constitute legal advice. He contended defendants' arguments regarding state action, takings, and defendants' own free speech rights had been rejected by California and United States Supreme Court authority. He then asserted the balance of hardships weighed in his favor, given his desire to hand out flyers, something "which routinely occurs at other shopping centers, and which is protected by California's [C]onstitution."

### 4.   *Trial court's ruling*

The trial court denied plaintiff's motion for a preliminary injunction. The court reasoned plaintiff had indicated in his deposition that he intended to leaflet in front of three specific stores, whereas *Pruneyard* applied to the common areas of shopping centers, with "seating, amenities, or other attributes that *encourage* patrons to linger and congregate." Thus, the "areas in which Plaintiff seeks to leaflet are not transformed into a public forum to warrant constitutional protections."

The trial court further concluded plaintiff's speech was "unprotected because he is giving legal advice without a law license." The court quoted plaintiff's flyer stating that "men are not *legally* and financially responsible [to] support a child that a woman chooses to have," and encouraging men to "[l]earn your *rights*." (Boldface & some capitalization omitted.) The court also

9

quoted plaintiff's deposition, in which plaintiff acknowledged his activism "involve[d] legal issues." The court quoted the following exchange: "Q: And the position that you advocate is that a man does not have to pay child support for a child conceived out of marriage; correct? [¶] A: Yes. [¶] Q: Okay. As a legal matter, correct? [¶] A: As a legal matter and a[n] issue regarding a man's right." The court characterized these statements as not only unlicensed legal advice but also *inaccurate* legal advice, such that "Plaintiff's speech—regardless of the location—is unprotected speech."

The court also ruled plaintiff's requested injunction was mandatory, not prohibitory, because "Plaintiff's request to allow Plaintiff to leaflet in *private areas* would substantially change the parties' position—i.e., divest Defendants of property rights," as well as require defendants "to *alter* [their] rules on content-neutral speech."

In a footnote, the trial court rejected defendants' argument that the solicitation of signatures at issue in *Pruneyard* involved less intrusive speech than plaintiff's proposed leafletting: "Solicitation of signatures entails more *active participation* by the patrons (i.e., *engaging* with the activist and *reading* and *signing* papers) whereas leafletting would not require active participation by a patron. In fact, Plaintiff in his deposition states when he passes leaflets, '[t]he typical reaction is probably maybe a blank face. They take it, and they walk off.' [Citation.]" (Boldface omitted.) The court found "insufficient/no evidence that Plaintiff's activities are causing a substantial disruption." Accordingly, "a blanket ban is unconstitutional."

Although the court concluded plaintiff did not have a likelihood of prevailing on the merits, the court noted the balance

10

of harms would have favored plaintiff.  The court agreed with plaintiff that infringement of a constitutional right can be enough to establish an irreparable injury.  Defendants' harm, in contrast, "is largely hypothetical and unsupported by compelling evidence." The court was unpersuaded that plaintiff's leafletting would disturb the Centers' patrons, and concerns with littering or maintaining the proper guest experience had "been rejected as harms by California and federal courts alike."

Plaintiff timely appealed.[4]

## DISCUSSION

### A.    Governing Law and Standard of Review

" '[A] preliminary injunction is an order that is sought by a plaintiff prior to a full adjudication of the merits of its claim.' [Citation.]  'To obtain a preliminary injunction, a plaintiff ordinarily is required to present evidence of the irreparable injury or interim harm that it will suffer if an injunction is not issued pending an adjudication of the merits.'  [Citation.]" (*Amgen Inc. v. California Correctional Health Care Services* (2020) 47 Cal.App.5th 716, 731 (*Amgen*).)

"Trial courts ' "evaluate two interrelated factors when deciding whether or not to issue a preliminary injunction.  The first is the likelihood that the plaintiff will prevail on the merits at trial.  The second is the interim harm that the plaintiff is likely to sustain if the injunction were denied as compared to the harm that the defendant is likely to suffer if the preliminary

---

[4] Orders denying injunctions are appealable under Code of Civil Procedure section 904.1, subdivision (a)(6).

injection were issued." ' [Citation.]" (*Amgen*, *supra*, 47 Cal.App.5th at p. 731.)

" 'We review a trial court's application of these factors for abuse of discretion.' [Citation.]" (*Amgen*, *supra*, 47 Cal.App.5th at p. 731.) "Notwithstanding the applicability of the abuse of discretion standard of appellate review, when the trial court's order involves the interpretation and application of a constitutional provision, statute, or case law, questions of law are raised and those questions of law are subject to de novo (i.e., independent) review on appeal." (*Prigmore v. City of Redding* (2012) 211 Cal.App.4th 1322, 1333 (*Prigmore*).) "It is an abuse of discretion for a trial court to misinterpret or misapply the law." (*Id.* at p. 1334.)

Defendants argue the trial court's determination that plaintiff's requested preliminary injunction is a mandatory injunction affects the standard of review. In general terms, a mandatory injunction requires a defendant "to take affirmative action," in contrast to a prohibitory injunction, which "requires no action and merely preserves the status quo." (*Daly v. San Bernardino County Bd. of Supervisors* (2021) 11 Cal.5th 1030, 1035 (*Daly*).)[5] Mandatory injunctions are "automatically stayed during the pendency of the appeal," while prohibitory injunctions "ordinarily take[ ] effect immediately." (*Ibid.*)

Courts have stated that a mandatory preliminary injunction is " 'rarely granted, and is subject to stricter review on appeal. [Citation.] The granting of a mandatory injunction

---

[5] Our Supreme Court cautioned, "Like many distinctions in the law, the distinction between a mandatory and a prohibitory injunction sometimes proves easier to state than to apply." (*Daly*, *supra*, 11 Cal.5th at p. 1042.)

pending trial is not permitted except in extreme cases where the right thereto is clearly established. [Citation.]' [Citation.]" (*Teachers Ins. & Annuity Assn. v. Furlotti* (1999) 70 Cal.App.4th 1487, 1493; accord, *City of Corona v. AMG Outdoor Advertising, Inc.* (2016) 244 Cal.App.4th 291, 299.)

Plaintiff seeks a preliminary injunction on defendants' absolute ban on all expressive activity at the Centers. As discussed *post*, under *Pruneyard*, the Centers cannot ban all expressive activity in common areas at the Centers. Plaintiff has thus demonstrated a clearly established right to a preliminary injunction against defendants' ban of all expressive activity even if, arguendo, we were to characterize plaintiff's request as one for a mandatory preliminary injunction.

## B.  Relevant Jurisprudence Concerning Free Expression in Shopping Centers

### 1.  *Pruneyard*

Article I, section 2(a) of the California Constitution provides, "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press." Section 3(a) provides, "The people have the right to instruct their representatives, petition government for redress of grievances, and assemble freely to consult for the common good." In *Pruneyard*, a four-justice majority of our Supreme Court concluded these provisions "protect speech and petitioning, reasonably exercised, in shopping centers even when the centers are privately owned." (*Pruneyard*, *supra*, 23 Cal.3d at p. 910.)

*Pruneyard* concerned a shopping center with "walkways, plazas, and buildings that contain 65 shops, 10 restaurants, and

a cinema." (*Pruneyard*, *supra*, 23 Cal.3d at p. 902.)  The shopping center "strictly and disinterestedly enforced" a policy not permitting "any tenant or visitor to engage in publicly expressive activity, including the circulating of petitions, that is not directly related to the commercial purposes" of the shopping center.  (*Ibid.*)

The *Pruneyard* appellants were high school students opposed "to a United Nations resolution against 'Zionism.' " (*Pruneyard*, *supra*, 23 Cal.3d at p. 902.)  They set up a card table in the shopping center's "central courtyard" and "sought to discuss their concerns with shoppers and to solicit signatures for a petition to be sent to the White House in Washington."  (*Ibid.*)  When security guards ordered them off the premises, they filed suit.  (*Id.* at pp. 902–903.)  "The trial court rejected their request that Pruneyard be enjoined from denying them access."  (*Id.* at p. 903.)

Our high court reversed.  (*Pruneyard*, *supra*, 23 Cal.3d at p. 911.)  The court first concluded federal authorities, in particular *Lloyd Corp., Ltd. v. Tanner* (1972) 407 U.S. 551 (*Lloyd*), did "not preclude law-making in California which requires that shopping center owners permit expressive activity on their property.  To hold otherwise would flout the whole development of law regarding states' power to regulate uses of property."  (*Pruneyard*, at pp. 905–906.)[6]  " '[A]ll private property

_____

[6] *Lloyd* held the First Amendment of the federal Constitution did not entitle members of the public to distribute handbills at a privately owned and operated shopping center.  (*Lloyd*, *supra*, 407 U.S. at pp. 552, 570.)  In *Diamond v. Bland* (1974) 11 Cal.3d 331, our Supreme Court read *Lloyd* additionally to hold that "the due process clause of the United States

14

is held subject to the power of the government to regulate its use for the public welfare.' [Citation.]" (*Pruneyard*, at p. 906.) "To protect free speech and petitioning is a goal that surely matches the protecting of health and safety, the environment, aesthetics, property values and other societal goals that have been held to justify reasonable restrictions on private property rights." (*Id.* at p. 908.)

The court noted, "[C]entral business districts apparently have continued to yield their functions more and more to suburban centers." (*Pruneyard, supra*, 23 Cal.3d at p. 907.) The court cited evidence submitted by the appellants showing increases in suburban populations around San Jose, and a decrease in both population and retail sales in central San Jose. (*Ibid.*) "The largest segment of the county's population is likely to spend the most significant amount of its time in suburban areas where its needs and wants are satisfied; and shopping centers provide the location, goods, and services to satisfy those needs and wants." (*Ibid.*) The court stated this evidence "helps dramatize the potential impact of the public forums sought here." (*Ibid.*)

The court further noted the framers of the California Constitution "could have adopted the words of the federal Bill of Rights [but] they chose not to do so. [Citation.] Special protections thus accorded speech are marked in this court's

---

Constitution protects the property interests of the shopping center owner from infringement," and "supremacy principles would prevent us from employing state constitutional provisions to defeat defendant's federal constitutional rights." (*Diamond*, at p. 335, fn. 4.) *Pruneyard* reexamined *Lloyd* and overruled *Diamond*. (*Pruneyard, supra*, 23 Cal.3d at p. 910.)

opinions," including that California's " 'liberty of speech' " clause is " '[a] protective provision more definitive and inclusive than the First Amendment.' " (*Pruneyard*, *supra*, 23 Cal.3d at p. 908.) The court cited its earlier opinions allowing picketing at a bakery in a shopping center (*Schwartz-Torrance Investment Corp. v. Bakery & Confectionary Workers' Union* (1964) 61 Cal.2d 766), and distributing handbills on a grocery store's private sidewalk and in a privately owned train station (*In re Lane* (1969) 71 Cal.2d 872; *In re Hoffman*(1967) 67 Cal.2d 845). (See *Pruneyard*, at pp. 908–909.)

The court thus concluded, "The California Constitution broadly proclaims speech and petition rights. Shopping centers to which the public is invited can provide an essential and invaluable forum for exercising those rights." (*Pruneyard*, *supra*, 23 Cal.3d at p. 910.) " ' "[T]he countervailing interest which [the owner] endeavors to vindicate emanates from the exclusive possession and enjoyment of private property. Because of the public character of the shopping center, however, the impairment of [the owner's] interest must be largely theoretical. [The owner] has fully opened his [*sic*] property to the public. . . ." ' [Citation.]" (*Ibid.*) Thus, the California Constitution protected the public's right to speech and petitioning at a privately owned shopping center. (*Ibid.*)

The court emphasized, "By no means do we imply that those who wish to disseminate ideas have free rein." (*Pruneyard*, *supra*, 23 Cal.3d at p. 910.) The court noted the *Hoffman* decision's "endorsement of time, place, and manner rules." (*Pruneyard*, at p. 910.) The court further noted it was not considering the property and privacy rights of individual homeowners or small retail establishments, but a shopping

16

center inviting thousands of people to congregate on a daily basis. (*Ibid.*) " 'A handful of additional orderly persons soliciting signatures and distributing handbills in connection therewith, under reasonable regulations adopted by defendant to assure that these activities do not interfere with normal business operations [citation] would not markedly dilute defendant's property rights.' [Citation.]" (*Id.* at p. 911.)

The court reversed "[t]he judgment rejecting appellants' request that Pruneyard be enjoined from denying access to circulate the petition." (*Pruneyard*, *supra*, 23 Cal.3d at p. 911.)

The United States Supreme Court subsequently rejected a federal constitutional challenge to *Pruneyard*, holding "the requirement that appellants permit appellees to exercise state-protected rights of free expression and petition on shopping center property clearly does not amount to an unconstitutional infringement of appellants' property rights under the Taking Clause." (*PruneYard Shopping Center v. Robins* (1980) 447 U.S. 74, 83.) The court also rejected the argument that the shopping center owner "has a First Amendment right not to be forced by the State to use his property as a forum for the speech of others." (*Id.* at p. 85.) The court reasoned, inter alia, "The views expressed by members of the public in passing out pamphlets or seeking signatures for a petition . . . will not likely be identified with those of the owner," and the owner "can expressly disavow any connection with the message by simply posting signs in the area where the speakers or handbillers stand." (*Id.* at p. 87.)

### 2. Our Supreme Court's post-*Pruneyard* shopping center cases

Our Supreme Court affirmed its *Pruneyard* holding in *Fashion Valley Mall, LLC v. National Labor Relations Bd.* (2007)

17

42 Cal.4th 850.  In that case, the court held the California Constitution's free speech protections extended to union members urging a boycott of one of the stores in a shopping mall by passing out leaflets to customers entering and leaving the store.  (*Id.* at pp. 854–855.)

The court examined *Pruneyard* again in *Ralphs Grocery Co. v. United Food & Commercial Workers Union Local 8* (2012) 55 Cal.4th 1083 (*Ralphs*).  That case involved a supermarket "in a retail development . . . which also contains restaurants and other stores."  (*Id.* at p. 1089.)  The "supermarket owner sought a court injunction to prevent a labor union from picketing on the privately owned walkway in front of the only customer entrance to its store."  (*Id.* at p. 1088.)

The high court concluded, "[T]he supermarket's privately owned entrance area is not a public forum under the California Constitution's liberty of speech provision."  (*Ralphs*, *supra*, 55 Cal.4th at p. 1088.)  "[*Pruneyard*'s] reasoning is most apt in regard to shopping centers' common areas, which generally have seating and other amenities producing a congenial environment that encourages passing shoppers to stop and linger and to leisurely congregate for purposes of relaxation and conversation. By contrast, areas immediately adjacent to the entrances of individual stores typically lack seating and are not designed to promote relaxation and socializing.  Instead, those areas serve utilitarian purposes of facilitating customers' entrance to and exit from the stores and also, from the stores' perspective, advertising the goods and services available within."  (*Ralphs*, at p. 1092.)

The court further reasoned, "Soliciting signatures on initiative petitions, distributing handbills, and similar expressive activities pose a significantly greater risk of interfering with

18

normal business operations when those activities are conducted in close proximity to the entrances and exits of individual stores rather than in the less heavily trafficked and more congenial common areas.  Therefore, within a shopping center or mall, the areas outside individual stores' customer entrances and exits, at least as typically configured and furnished, are not public forums under [*Pruneyard*]." (*Ralphs*, *supra*, 55 Cal.4th at p. 1092.)

The court favorably cited two Court of Appeal decisions, *Albertson's, Inc. v. Young* (2003) 107 Cal.App.4th 106 (*Albertson's*) and *Van v. Target Corp.* (2007) 155 Cal.App.4th 1375 (*Van*).  *Albertson's* held that the walkway in front of a supermarket was not a public forum under the California Constitution:  "[T]he grocery store 'does not invite the public to meet friends, to eat, to rest, to congregate, or to be entertained as its premises' [citation], nor was the store or its entrance area 'a place where people choose to come and meet and talk and spend time' [citation]." (*Ralphs*, *supra*, 55 Cal.4th at pp. 1092–1093, citing *Albertson's*, at pp. 110, 120–121.)  The Court of Appeal accordingly affirmed "an injunction barring the defendants from coming onto the store's premises to solicit signatures on initiative petitions." (*Ralphs*, at p. 1092, citing *Albertson's*, at pp. 109–110.)

*Van* concluded, "[T]he entrances to individual stores located within shopping centers are not public forums for purposes of the state Constitution's liberty of speech provision," and therefore members of the public were not entitled to gather voter signatures in front of Target, Wal-Mart, and Home Depot stores. (*Ralphs*, *supra*, 55 Cal.4th at p. 1093, citing *Van*, *supra*, 155 Cal.App.4th at pp. 1378–1379, 1381.)  The Court of Appeal reasoned, " '[N]either respondents' stores themselves nor the

19

apron and perimeter areas of the stores were comprised of courtyards, plazas or other places designed to encourage patrons to spend time together or be entertained.' [Citation.]" (*Ralphs*, at p. 1093, citing *Van*, at pp. 1388–1389.)  Rather, " 'the evidence showed that the stores are uniformly designed to encourage shopping as opposed to meeting friends, congregating or lingering.' [Citation.]" (*Ralphs*, at p. 1093, citing *Van*, at p. 1389.)  Thus, "the entrance and exit areas of the stores in question, which were located within shopping centers, 'lacked any public forum attributes.' [Citation.]" (*Ralphs*, at p. 1093, citing *Van*, at p. 1391.)

The Supreme Court "agree[d] with these intermediate appellate decisions that to be a public forum under our state Constitution's liberty of speech provision, an area within a shopping center must be designed and furnished in a way that induces shoppers to congregate for purposes of entertainment, relaxation, or conversation, and not merely to walk to or from a parking area, or to walk from one store to another, or to view a store's merchandise and advertising displays." (*Ralphs*, *supra*, 55 Cal.4th at p. 1093.)  "On the private property of a shopping center, the public forum portion is limited to those areas that have been designed and furnished to permit and encourage the public to congregate and socialize at leisure." (*Id.* at p. 1104.)[7]

---

[7] Although the high court concluded the union had no constitutional right to picket in front of the supermarket, it further concluded the union had a statutory right to do so under the Moscone Act (Code Civ. Proc., § 527.3) and Labor Code section 1138.1, which limit courts' authority to enjoin union activity during labor disputes.  (*Ralphs*, *supra*, 55 Cal.4th at pp. 1088, 1094–1095.)

## C. Plaintiff Has Demonstrated a Likelihood of Prevailing on the Merits at Trial

Although the trial court concluded, "[A] blanket ban [on leafletting] is unconstitutional," it found plaintiff was not likely to prevail on his constitutional challenge at trial because 1) in deposition, plaintiff stated he wished to leaflet near the entrance of three businesses within the Centers, areas the trial court found were not public fora; and 2) the trial court found the message plaintiff sought to convey through his leaflets constituted unlicensed legal advice unprotected by the California Constitution's liberty of speech provision.

As we explain, the trial court's findings that plaintiff's expression is unprotected, even if correct, would not prevent plaintiff from asserting a facial constitutional challenge on behalf of others. The trial court's findings, however, are not correct.

### 1. Plaintiff has standing to assert a facial challenge on behalf of others

A constitutional challenge to a regulation may be "facial" or "as-applied." (See *People v. Williams* (2024) 17 Cal.5th 99, 120–121 (*Williams*).) " 'A facial challenge to the constitutional validity of a statute or ordinance considers only the text of the measure itself, not its application to the particular circumstances of an individual.' [Citation.]" (*Id.* at p. 120.) "To prevail on a facial challenge, litigants must show that the challenged rule creates constitutional problems in 'at least " 'the generality' " [citation] or "vast majority" ' of cases." (*People v. Martinez* (2023) 15 Cal.5th 326, 338.) "[I]t is not enough to show ' " 'that in some future hypothetical situation constitutional problems may possibly arise as to the particular *application* of the

21

statute . . . . Rather, petitioners must demonstrate that the act's provisions inevitably pose a present total and fatal conflict with applicable constitutional prohibitions.' " ' [Citations.]" (*Williams*, at pp. 120–121.)

In contrast, an as-applied challenge "seeks 'relief from a specific application of a facially valid statute or ordinance to an individual or class of individuals who are under allegedly impermissible present restraint or disability as a result of the manner or circumstances in which the statute or ordinance has been applied.' [Citation.]" (*Williams*, *supra*, 17 Cal.5th at p. 120, italics omitted.)

Although plaintiff asserts in his complaint that he is challenging the Centers' total ban on expressive activity both facially and as applied to him, his challenge is primarily a facial challenge. He contends the total ban is invalid under *Pruneyard*, and seeks a declaration so stating, as well as an injunction barring defendants from enforcing the ban not only against him, but against anyone. Plaintiff is not seeking relief from a particular application of the total ban, but rather invalidation of the total ban.

Defendants argue plaintiff lacks standing to raise a facial challenge because the trial court found his conduct was constitutionally unprotected, and therefore he suffered no constitutional injury from the total ban. Defendants are correct that as a general matter, to establish standing a plaintiff must show the challenged law is " ' " 'applicable to him and that he is injuriously affected thereby.' " ' " (*County of San Diego v. San Diego NORML* (2008) 165 Cal.App.4th 798, 814.)

This rule is relaxed, however, for challenges to restrictions on free expression. As our Supreme Court stated in *People v.*

22

*Fogelson* (1978) 21 Cal.3d 158 (*Fogelson*), "It is generally true that an individual charged with violating a law or regulation may attack the constitutionality of that law or regulation only as it applies to the facts of his or her case. However, when the law or regulation is challenged on its face as substantially encroaching upon First Amendment protected activity, a court may consider the measure as it applies to others." (*Id.* at p. 163.)

The court explained the need for a more relaxed standing rule as to restriction on free expression: "Such review is permitted in these circumstances because case-by-case adjudication may not fully vindicate the constitutional rights at stake. The actual application of an overbroad ordinance is not its only vice; it may also have a substantial deterrent impact or 'chilling effect' on the exercise of constitutional rights. Faced with a regulation that threatens to impose sanctions upon free speech or the free exercise of religion, significant numbers of persons may elect not to exercise those rights rather than undergo the rigors of litigation and the risk of eventual punishment. While it is crucial that persons not be punished for having exercised their rights of free speech and religion, it is equally important that they not be deterred from such conduct." (*Fogelson*, *supra*, 21 Cal.3d at pp. 163–164, fn. omitted.)

Thus, "[t]his court need not determine whether [the challenger] was engaged in constitutionally protected activity in order to entertain his contention that the ordinance is invalid on its face." (*Fogelson*, *supra*, 21 Cal.3d at p. 163; see *In re Andre P.* (1991) 226 Cal.App.3d 1164, 1172 [" 'Litigants. . . are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others

23

not before the court to refrain from constitutionally protected speech or expression"], quoting *Broadrick v. Oklahoma* (1973) 413 U.S. 601, 612.) A litigant therefore may facially challenge a statute " ' "with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity." ' [Citation.]" (*Andre P.*, at p. 1172, quoting *Broadrick*, at p. 612.)

Although *Fogelson* concerned a criminal defendant's constitutional challenge to an ordinance under which he had been charged—in that case, an ordinance prohibiting soliciting contributions on public property without a permit (*Fogelson*, *supra*, 21 Cal.3d at p. 161)—the principles applied in that case are not limited to that context. *Prigmore* demonstrates that a party may prospectively challenge an ordinance restricting free speech without first being prosecuted, and the principle of relaxed standing applies in that circumstance as well.

In *Prigmore*, two organizations and a member of one of the organizations, referred to collectively in the opinion as "the Tea Party," sought to enjoin a city ordinance regulating distribution of handbills. (*Prigmore*, *supra*, 211 Cal.App.4th at pp. 1329, 1332, 1348–1349.)[8] The defendant city argued the Tea Party

---

[8] The ordinance prohibited placing handbills on vehicles, required handbills to identify their author and distributor, and prohibited handbills "that 'tend to incite riot,' advocate disloyalty to or overthrow of the government, or are 'offensive to public morals or decency or contains blasphemous, obscene, libelous or scurrilous language.' " (*Prigmore*, *supra*, 211 Cal.App.4th at p. 1332.) In addition to the ordinance, the Tea Party challenged a city policy regulating leafletting on the property of the municipal library. (*Id.* at p. 1327–1328.) *Prigmore*'s holdings regarding the

24

plaintiffs lacked standing because the ordinance had never been enforced against the plaintiffs "nor was there any credible threat of enforcement," given only one citation had been issued under the ordinance in recent times. (*Id.* at p. 1349.)

The Court of Appeal rejected the argument that to challenge the ordinance, the plaintiffs had to be charged under the ordinance. " 'It is sufficient for standing purposes that the plaintiff intends to engage in "a course of conduct arguably affected with a constitutional interest" and that there is a credible threat that the challenged provision will be invoked against the plaintiff. . . . [Citation.]' [Citation.]" (*Prigmore, supra*, 211 Cal.App.4th at p. 1349.) "Under California law, it is sufficient that the objecting party show actual or threatened injury from the enactment of a statute or regulatory measure." (*Ibid.*)

The court then noted, "In the First Amendment context, the United States Supreme Court has relaxed the general rule of standing to allow even a challenge to the constitutionality of an ordinance affecting even those *other than* the challenger. 'This exception from traditional rules of standing to raise constitutional issues has reflected the Court's judgment that the very existence of some statutes may cause persons not before the Court to refrain from engaging in constitutionally protected speech or expression.' [Citation.]" (*Prigmore, supra*, 211 Cal.App.4th at p. 1349, quoting *Young v. American Mini Theatres* (1976) 427 U.S. 50, 59–60.)

---

library's leafletting policy, as opposed to the ordinance, are not pertinent to this appeal.

The court "conclude[d] the Tea Party faced a 'realistic danger' or 'credible threat' of prosecution under the Handbill Ordinance," because the city "has not declared its intent to abandon the ordinance," and had "sought other means to interfere with leafleting" in the forum at issue in the case. (*Prigmore*, *supra*, 211 Cal.App.4th at p. 1350.) " 'Further, the alleged danger of this statute is, in large measure, one of self-censorship; a harm that can be realized even without an actual prosecution.' [Citation.]" (*Ibid.*, quoting *Virginia v. American Booksellers Assn.* (1988) 484 U.S. 383, 393.)

*Fogelson*'s and *Prigmore*'s standing analysis under the federal First Amendment applies equally to a challenge under the California Constitution's liberty of speech provision, which " 'is broader and more protective than the free speech clause of the First Amendment. [Citations.]' [Citation.]" (*Prigmore*, *supra*, 211 Cal.App.4th at p. 1336.) The analysis also applies in the context of a private shopping center, the common areas of which *Pruneyard* and *Ralphs* establish are public fora. We therefore conclude plaintiff has standing to facially challenge the Centers' total ban on expressive activity and seek to enjoin enforcement of that ban, without regard for whether his particular expressive activity is constitutionally protected.

Citing *City of Santa Monica v. Stewart* (2005) 126 Cal.App.4th 43 (*Stewart*), defendants argue plaintiff must satisfy additional elements before he can raise a free-expression challenge on behalf of others without establishing his own constitutional injury. *Stewart* is distinguishable.

As relevant here, *Stewart* concerned the constitutionality of an initiative enacted by Santa Monica voters "prevent[ing] city officials from receiving certain advantages from persons or

26

entities who derived benefit from discretionary decisions made by those officials." (*Stewart*, *supra*, 126 Cal.App.4th at p. 50.) "In general terms, the Initiative prohibits city officials from receiving campaign contributions, employment for compensation, or gifts or honoraria of more than $50 for a specified time after the end of their term of office from any person or entity who or which benefited financially (by more than $25,000 over a 12–month period) from the officials' discretionary decisions made while in office." (*Id.* at p. 51.)

Santa Monica officials, including members of the city council, had opposed the initiative, and the city attorney believed it was unconstitutional. (*Stewart*, *supra*, 126 Cal.App.4th at pp. 52–53.) The city clerk, "based primarily on the city attorney's advice," informed the city council "she was refusing to enforce the Initiative until its constitutionality was determined." (*Id.* at p. 53.)

The City of Santa Monica then "filed an action for declaratory relief and a petition for writ of mandate against its city clerk," asking the court to determine the initiative's constitutionality. (*Stewart*, *supra*, 126 Cal.App.4th at p. 53.) The initiative's proponents intervened in the lawsuit "solely for 'the purpose of seeking its dismissal as a collusive, non-justiciable action, and as a misuse of taxpayer funds for private purposes.' " (*Ibid.*) The trial court dismissed the case for lack of standing. (*Stewart*, *supra*, 126 Cal.App.4th at pp. 54, 59.)[9]

The Court of Appeal affirmed. (*Stewart*, *supra*, 126 Cal.App.4th at pp. 59, 91.) The court held the matter was

---

[9] The trial court and Court of Appeal further concluded the question of the initiative's constitutionality was not ripe for adjudication. (*Stewart*, *supra*, 126 Cal.App.4th at p. 59.)

27

nonjusticiable "[u]nder traditional standing principles," because "[t]he complaint does not specify any actual or threatened action which would injure the city or violate its rights. Rather, the complaint alleges only that Santa Monica is concerned that implementation of the Initiative might prospectively affect the rights of its volunteer and paid public officials. Santa Monica also does not allege any actual or threatened action on the part of the city clerk—who bears no specific duties under the Initiative— which injures or could injure the city." (*Id.* at p. 60.) The court further noted Santa Monica's earlier "steadfast opposition to the enactment and implementation of the Initiative" and "the tepid nature of its allegations seeking to enforce the measure," all of which created "significant doubt" as to whether "Santa Monica is a 'party with a true incentive . . . to present arguments supporting [the Initiative's] validity.' [Citation.]" (*Ibid.*)

The court acknowledged that "[s]tanding rules are sometimes relaxed in cases involving challenges to the constitutionality of a statute brought by a party whose own rights are not impacted, but whose challenge is raised on behalf of absent third parties." (*Stewart*, *supra*, 126 Cal.App.4th at p. 61.) "Two intertwined factors must be examined to determine whether relaxation of the general rules is appropriate. First, the relationship between the litigant and the absent third party whose rights the litigant asserts must be so close that the litigant 'is fully, or very nearly, as effective a proponent of the right as' would be the absent party." (*Ibid.*, citing *Singleton v. Wulff* (1976) 428 U.S. 106, 114–116, and *Selinger v. City Council* (1989) 216 Cal.App.3d 259, 270–271.) Second, "[e]ven where the relationship between the litigant and third party is close, some

28

'genuine obstacle' must prevent the absent party from asserting his or her own interests." (*Ibid.*)

The court found these factors did not justify a departure from traditional standing rules. "Even if Santa Monica—which vigorously opposed enactment of the Initiative and has challenged its constitutionality at every opportunity—could be as effective a proponent of the First Amendment rights as its absent public officials would be, no 'genuine obstacle' prevents an absent public official from mounting a challenge to the constitutionality of the measure. In the absence of such an obstacle, no basis exists for the city's assertion of absent third parties' purported interests." (*Stewart*, *supra*, 126 Cal.App.4th at p. 62.)

The court rejected the city clerk's argument that *Fogelson* and *Andre P.* established "courts 'routinely adjudicate challenges to statutes on First Amendment grounds even where the particular constitutional deficiency of the statute may not affect the person making the challenge." (*Stewart*, *supra*, 126 Cal.App.4th at p. 62.) The court noted those cases "involved potential penalties or prosecution[;] this case does not. Nor does the record indicate any city official potentially impacted by the Initiative faces the risk of civil or criminal penalties in mounting a challenge to the constitutionality of the enactment." (*Ibid.*)

Relying on *Stewart*, defendants in the instant case contend plaintiff lacks standing to assert the rights of absent third parties, because he has neither argued nor produced evidence establishing a close connection between himself and absent third parties, nor has he established third parties "face any genuine obstacle to asserting their own interests." Defendants argue the "genuine obstacle" requirement "is ordinarily satisfied by the fact that third parties fear potential penalties or prosecution," but

that concern is not present here because "the Centers are private entities, and cannot penalize or prosecute anyone."

We first observe that the facts of the instant case are not analogous to *Stewart*. Santa Monica and its clerk attempted to manufacture a controversy regarding an initiative both parties privately agreed was unconstitutional, not because the initiative affected the city or its clerk, but because it might affect other city officials. In that circumstance, the court questioned the sincerity of Santa Monica's defense of the initiative, and concluded the matter should wait for a challenge from an official actually affected by the new law.

The same is not true of plaintiff here. Like the challengers in *Fogelson* and *Prigmore*, plaintiff himself wishes to engage in expressive activity, and thus is affected by the Centers' restriction on that activity. Under analogous circumstances, *Fogelson* concluded the party challenging the ordinance had standing regardless of whether his own expressive activity was protected. Neither *Fogelson* nor *Prigmore* required the challenging parties to demonstrate a close connection with absent third parties. In addition, unlike in *Stewart*, there is no concern plaintiff here, who wishes to leaflet at the Centers, will not be an effective proponent of the right to free expression.

We disagree with defendants that the Centers' ban on expressive activity is not comparable to the penal ordinances at issue in *Fogelson* and *Prigmore*. The signs at the Centers proclaiming the ban warn that "offenders will be prosecuted to the fullest extent of the law," with "enforce[ment] by Redlands Police Dept." (Some capitalization omitted.) An individual considering engaging in expressive activity at the Centers therefore would fear legal consequences and confrontation with

30

law enforcement. These risks are enough to chill free expression and lead to the self-censorship that concerned the *Fogelson* and *Prigmore* courts.

In sum, plaintiff has standing to bring his facial challenge even if his own expressive activity were not protected.

## 2. Alternatively, plaintiff has established standing based on his own constitutional injury

Assuming arguendo the relaxed rule of standing does not apply in this case, and therefore plaintiff must establish his own constitutional injury, the evidence does not support the trial court's conclusion that he has not done so.

To recap, the trial court found plaintiff could not prevail on his free-expression challenge because 1) he sought to leaflet in store aprons, areas that are not public fora under *Pruneyard*; and 2) his particular message constituted unlicensed legal advice unprotected by the California Constitution's liberty of speech clause.

### a. Plaintiff's deposition testimony does not limit his challenge to locations unprotected under *Pruneyard*

The trial court apparently construed plaintiff's claim as asserting a right to leaflet in store aprons. We note initially there is no evidence that when plaintiff requested permission to leaflet at the Centers, he limited his request to store aprons. His complaint similarly does not seek an injunction allowing him to leaflet in store aprons, or any particular location within the Centers, but merely to prevent enforcement of the total ban on expressive activity. The question, then, is whether the trial court correctly concluded plaintiff's deposition testimony limited his

31

constitutional challenge to locations unprotected under *Pruneyard*.

We quote the relevant portions of plaintiff's deposition testimony:

"Q. Mr. Salazar, what exactly do you want to do at Citrus Plaza or Mountain Grove?

"A. Stand off to the side somewhere and pass out my flyers.

"Q. Any particular place?

"A. Target's one place. The sidewalk in front of the movie theater is another. And I'm not sure—the gym. I know there's a gym in Mountain Grove.

"Q. Okay. Any other places?

"A. Not—no. I—just those three."

"Q. Okay. . . . "[W]hen you say stand off to the side, what do you mean?

"A. Well, say you have the entrance to a business. You are off to the side either on the left or the right but not directly in front of.

"Q. The entrance?

"A. Yes. Not directly in front of the entrance.

"Q. How many feet to the side of the entrance do you want to stand?

"A. I—I don't know. Let me try to imagine feet. I don't know if 10 or 15 feet is what I'm necessarily envisioning in my mind, but it would be . . . way more than a couple of feet off to the side, I suppose. But not far off also."

"Q. Okay. So—well, now is the time for you to tell us what . . . you want. So how many feet are you seeking to be from the entrance of these places you've identified?"

"A. I'm not sure. Maybe 5 feet away. . . . Maybe 5 to 10 feet away.

"Q. From the entrance?

"A. Yes.

. . .

"Q. Okay. And that's on the sidewalk right next to the entrance to those—

"A. Well, it's on the sidewalk where the business is connected to, yes."

Based on the above-quoted testimony, defendants argue plaintiff "has expressly disclaimed an interest in conducting his purported petitioning activities in any other locations." Plaintiff "disclaimed" nothing. Defendants asked plaintiff where he preferred to leaflet and he told them. Defendants never offered plaintiff alternative locations, or asked whether plaintiff would consider leafletting elsewhere in the Centers if he were not permitted to leaflet in the store aprons. His testimony therefore cannot be construed as insisting on leafletting in the store aprons and refusing to leaflet anywhere else, as defendants imply. Plaintiff's challenge, again, is to the total ban, and his testimony does not undercut that.

### b. Plaintiff's leafletting does not constitute the unauthorized provision of legal advice

We disagree with the trial court that plaintiff's leafletting constitutes the unauthorized provision of legal advice such that it is not entitled to constitutional protection.

Plaintiff's first leaflet stated, inter alia, "Men are not legally and financially responsible for supporting a child that a woman chooses to have," and invited men to attend plaintiff's meetings to "Learn the truth. Learn your rights." (Boldface &

33

some capitalization omitted.)  His second leaflet described his meetings, stating, "I give a [one-hour] pre[sen]ta[t]ion in Riverside to teach men that they do have the r[e]pr[o]ductive right to choo[s]e too and why they are not r[e]sponsible for supporting a woman's r[e]pr[o]ductive d[ec]i[s]ion to have a child."

The trial court cited *Howard v. Superior Court* (1975) 52 Cal.App.3d 722 (*Howard*), which states, "The constitutional protection for free speech does not extend to the delivery of legal or medical or financial advice by persons not licensed to give such advice."  (*Id.* at p. 726.)  The court also cited Business and Professions Code section 6126, which provides, "Any person advertising or holding himself or herself out as practicing or entitled to practice law or otherwise practicing law who is not an active licensee of the State Bar, or otherwise authorized pursuant to statute or court rule to practice law in this state at the time of doing so, is guilty of a misdemeanor . . . ."  (Bus. & Prof. Code, § 6126, subd. (a).)  The court found plaintiff's statement that men were not financially responsible for the care of their children was not only legal advice but also *inaccurate* legal advice and cited Penal Code section 270, which criminalizes the failure to provide necessary care to one's child.  In light of these authorities, the court concluded plaintiff's leaflets are not constitutionally protected.

Plaintiff's leaflets cannot fairly be construed as offering legal advice.  The dictionary definition of "advice" is a "recommendation regarding a decision or course of conduct." (Merriam-Webster Dict. Online (2025) <https://www.merriam-webster.com/dictionary/advice> [as of Dec. 2, 2025], archived at <https://perma.cc/2H8D-Z3MQ>.)  Although arguably the leaflets

34

state plaintiff's interpretation of the law, the only recommendation the leaflets make is that the recipient attend plaintiff's presentation and/or contact him for further information. The leaflets do not advise recipients to cease paying child support. Rather, they present plaintiff's views on the law and invite the recipient to learn more at plaintiff's meetings.

Contrary to the trial court's reasoning here, *Howard* does not compel a different conclusion. In that case, the Court of Appeal rejected a First Amendment challenge to Penal Code former section 159a, which prohibited "advertisement of offers to procure or obtain, or to aid in procuring or obtaining, any dissolution or annulment of marriage." (*Howard*, *supra*, 52 Cal.App.3d at p. 724.) The court held the statute "deals with three legitimate areas of public concern over which the state may exercise its police power to promote the public good": 1) To "promote the stability of marital relationships"; 2) to "regulat[e] . . . persons who undertake to give advice on legal matters"; and 3) to "regulat[e] the use and abuse of [the state's] process and courts." (*Id.* at pp. 725–727.)

In discussing the second area of public concern, the regulation of those who give advice on legal matters, the court described that regulation to "include[ ] the determination of their competency to practice law, and . . . license[ ] them to represent others in legal proceedings. Traditionally, such regulation includes restrictions on, or prohibition against, the advertisement of such services. The constitutional protection for free speech does not extend to the delivery of legal or medical or financial advice by persons not licensed to give such advice. The state, to ensure competency in the performance of certain services and to protect its members from exploitation, may regulate, proscribe,

35

and prohibit speech insofar as it involves delivery of the regulated services." (*Howard*, *supra*, 52 Cal.App.3d at p. 726.) "Since dissolution or annulment of marriage necessarily involves legal proceedings, an advertisement offering to procure or obtain such marital dissolution is, presumptively, an offer to perform legal services . . . ." (*Ibid.*) The court thus concluded "that offers to procure and obtain, or to aid in procuring and obtaining, marriage dissolutions, presumptively fall within that legitimate area of state concern which involves the delivery of legal advice." (*Id.* at pp. 726–727.)

Howard does not suggest that merely stating one's interpretation of the law is unlicensed legal advice and therefore unprotected speech. *Howard*'s concern, rather, was with unlicensed individuals who offer to perform legal services, including the delivery of legal advice, such as advice on procuring marital dissolution. If plaintiff in his leaflets had offered to assist men in the legal process of challenging their child support obligations, this case arguably might be analogous to *Howard*. But plaintiff's leaflets offer nothing more than a future meeting at which more information will be provided.

To be clear, had the leaflets urged men not to pay their child support obligations based on plaintiff's interpretation of the law, those leaflets still would not necessarily have constituted the unlicensed provision of legal advice. *People v. Landlords Professional Services* (1989) 215 Cal.App.3d 1599 concluded that it did not constitute the unauthorized practice of law for a nonlawyer to provide "a manual, even a detailed one containing specific advice, for the preparation of an unlawful detainer action and the legal incidents of an eviction" so long as the nonlawyer "did not personally advise the client with regard to his specific

case." (*Id.* at p. 1608.)  We, however, need not address this hypothetical issue given our conclusion that plaintiff's leaflets do not advise any action other than to attend plaintiff's meetings.

Defendants argue plaintiff intends to provide "face-to-face" legal advice to men at the Centers and at his meetings. Defendants identify no evidence that plaintiff has, or intends to provide legal advice to people at the Centers, nor do they identify evidence regarding the content of any meeting outside the Centers, apart from the brief description in the leaflets themselves.  Indeed, according to plaintiff's deposition testimony, he has yet to hold a meeting because no one has responded to his leaflets.  We thus do not have the record on which to base a decision on whether the advertised meetings would cross the line into unlicensed legal advice.

In sum, neither defendant's deposition testimony nor the contents of his leaflets undercuts his allegations of constitutional injury.

### 3. The Centers' total ban on expressive activity violates *Pruneyard*

With plaintiff's standing established, *Pruneyard* is dispositive.  *Pruneyard* held the California Constitution "protect[s] speech and petitioning, reasonably exercised, in shopping centers even when the centers are privately owned." (*Pruneyard*, *supra*, 23 Cal.3d at p. 910.)  The Supreme Court ruled the subject shopping center therefore should be enjoined from enforcing its policy prohibiting "publicly expressive activity, including the circulating of petitions" against students wishing to circulate a petition.  (*Id.* at pp. 902, 911.)  The Centers' have similarly denied plaintiff permission to leaflet on their property

37

pursuant to an analogous policy forbidding expressive activity, including leafletting. This is unconstitutional under *Pruneyard*.

Defendants argue *Pruneyard* is distinguishable because that case concerned a central courtyard. According to a declaration by the Centers' senior property manager, "The Centers do not contain a central courtyard or any other areas dedicated to the public. All common areas in the Centers are reserved for commercial purposes . . . ."

Defendants undercut this assertion within the same declaration. The Centers' property manager states that the Centers contain a "turf area near the food court" that "provide[s] an inviting space for food court patrons to go while they eat meals purchased from the food court." The declaration also states that "certain spaces (for example, the turf area in the food court) are sometimes used for events (for example, music performances) . . . ." Although *Ralphs* narrowed the reach of *Pruneyard*, it nonetheless affirmed that areas within a shopping center are public fora if they are "designed and furnished in a way that induces shoppers to congregate for purposes of entertainment, relaxation, or conversation." (*Ralphs*, *supra*, 55 Cal.4th at p. 1093.) The turf area, as described by the senior property manager, meets this test, and belies the assertion that the Centers have no areas dedicated to the public.[10]

---

[10] We express no opinion whether defendants must allow expressive activity at the turf area as opposed to other common areas within the Centers. As *Pruneyard* establishes, defendants may impose time, place, and manner restrictions on expression at the Centers, which arguably could include allowing expression in some common areas but not others.

We acknowledge that the senior property manager's declaration explains that the purpose of the turf area is to promote the commercial interests of the Centers and the Centers' tenants, for example, by "draw[ing] guests to the food court," "attracting new guests to the Centers," and "increasing the amount of time regular guests spend at the Centers." We accept defendants intended the Centers to be drivers of commercial activity, not fora for free expression. The same was true of the shopping center in *Pruneyard*. The Supreme Court nevertheless concluded the shopping center's central courtyard was a public forum. We are bound by that authority to reach the same conclusion here.

Defendants argue the Centers' prohibition on expression constitutes a content-neutral time, place, and manner restriction subject to intermediate scrutiny. (See *Los Angeles Alliance for Survival v. City of Los Angeles* (2000) 22 Cal.4th 352, 364–365.) Under the intermediate scrutiny test, a content-neutral regulation of free expression is constitutional if it is "(i) narrowly tailored, (ii) serves a significant government interest, and (iii) leaves open ample alternative avenues of communication." (*Id*. at p. 364.) Defendants argue their total ban on leafletting is narrowly tailored because "all leafleting is harmful to the Center[s] and its guests," and defendants have "a contractual duty to enforce the Centers' expressive activity policy on behalf of the Centers' tenants." They further contend they have a significant commercial interest in restricting free expression at the Centers, and plaintiff has alternative avenues of communication, most notably the Internet, which defendants contend is a more effective means of communication that does not impact the Centers' guest experience.

We decline to engage in defendants' suggested analysis. *Pruneyard* and *Ralphs* establish a shopping center may not enforce *a total ban* on expression, because, at minimum, the shopping center's common areas are public fora under the California Constitution. The trial court found that plaintiff's proposed leafletting is no more disruptive to the shopping experience than the petitioning held protected in *Pruneyard*, and is analogous in that respect. We therefore cannot accept defendants' characterization of their total ban as a constitutional time, place, and manner regulation.

Defendants argue *Pruneyard* "applied a balancing test that took into account the competing interests of the property owner and of society *at that time*." Defendants deduce from this premise that developments since our high court decided *Pruneyard* in 1979 compel a different result today. In particular, "the Internet is now the new public square," and "offer[s] far more effective and less disruptive methods for individuals or groups to advocate for their causes than leafletting in a shopping center." Also, "the brick-and-mortar shopping centers of today face increasing competition from online retailers. This has increased the need for shopping centers to protect the quality of the customer experience."

Although *Pruneyard*'s reasoning depended in part on circumstances at the time it was authored, in particular the rise of the importance of the suburban shopping center, defendants identify nothing in that case that invites lower courts to reconsider *Pruneyard*'s holding in light of historical developments. We further note the Supreme Court has affirmed that holding twice in *Fashion Valley* and *Ralphs*, decisions

rendered after the advent of the Internet.[11]  It is for the Supreme
Court to decide if it no longer agrees with *Pruneyard*.

We similarly reject defendants' challenges to *Pruneyard*
itself, which defendants argue "should be superseded."
Defendants argue applying *Pruneyard* to compel them to allow
plaintiff to leaflet would violate the federal Constitution because
1) defendants are not state actors; 2) the order would be an
uncompensated taking of property; and 3) the order would violate
defendants' free speech rights under the First Amendment.  In
affirming *Pruneyard*, the United States Supreme Court rejected
similar federal constitutional challenges, including a takings and
First Amendment attack.  (*PruneYard Shopping Center v.
Robins, supra,* 447 U.S. at pp. 83, 85.)  In effect, defendants are
arguing that these cases from our state and federal high courts
were wrongly decided.  Disagreeing with decisions of courts of
higher jurisdiction is not within our wheelhouse as a court of
inferior jurisdiction.  (*Auto Equity Sales, Inc. v. Superior Court*
(1962) 57 Cal.2d 450, 455.)

### 4. The Centers' permitting requirement is unconstitutional

Plaintiff's complaint also challenges section 34 of the
Centers' code of conduct, which requires persons wishing to

---

[11]  It is not clear defendants' premise—that the Internet is
a more effective forum for expressive activity than leafletting at
shopping centers—is correct.  The Internet is littered with
banners, much of it for advertising, so much so that readers
either pay no attention to them or pay extra to exclude them.
The same is true for unsolicited e-mails from advocacy groups,
which readers may just delete without even reviewing the
messages.

engage in expressive activity to "obtain[ ] the prior written permission of the Centers' management." Plaintiff contends section 34 is unconstitutional because it "does not include any objective guidelines for determining when permission to leaflet will be granted."[12]

Plaintiff's argument is well taken. " '[A]ny procedure which allows licensing officials *wide or unbounded* discretion in granting or denying permits is constitutionally infirm because it permits them to base their determination on the content of the ideas sought to be expressed.' [Citations.]" (*Fogelson*, *supra*, 21 Cal.3d at p. 166, italics added, quoting *Dillon v. Municipal Court* (1971) 4 Cal.3d 860, 869–870; accord, *Concerned Dog Owners of California v. City of Los Angeles* (2011) 194 Cal.App.4th 1219, 1236 [" '[A] law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional.' "].)

Although section 34 states, "All non-commercial expressive activity must be in compliance with the Centers' rules for such activities," including the requirement of prior written permission, the code of conduct contains no rules for expressive activity, nor does it set forth any criteria for granting or denying permission to engage in noncommercial expressive activity. Section 34 therefore lacks the narrow, objective, and definite standards required to pass constitutional muster.

Defendants argue any discretion under section 34 is constrained by the Centers' policy, embodied in signage on the

---

[12] The trial court did not address section 34. It found the challenge "moot" in light of the court's conclusion albeit incorrect that plaintiff sought to leaflet solely in store aprons.

Centers' property and covenants, conditions, and restrictions recorded with the county clerk, prohibiting "broad categories of . . . expressive activity," including leafletting. Defendants further note, in practice, the Centers do not allow *any* noncommercial expressive activity, and therefore are neither exercising discretion nor discriminating against particular expression based on its content.

We have concluded that defendants' policy of prohibiting all noncommercial expressive activity, while nondiscretionary, is unconstitutional. That unconstitutional policy cannot guide the Centers in applying section 34. In the absence of that policy, there is nothing to limit the Centers' discretion in granting or denying permits, and section 34's permit requirement therefore is unconstitutional.

In sum, plaintiff has demonstrated a likelihood of prevailing on the merits at trial, both as to his challenge to the Centers' total ban on expression, and to section 34 of the Centers' code of conduct.

## D.     The Trial Court Did Not Abuse its Discretion In Concluding the Balance of Harms Favors Plaintiff

Contrary to the conclusion of the trial court, defendants argue the balance of harms does not favor plaintiff.[13] Defendants contend plaintiff will suffer no harm if he is not permitted to leaflet because that and other in-person methods of

---

[13] Although defendants did not cross-appeal, they may assert error on the part of the trial court to show plaintiff was not prejudiced by the errors plaintiff asserts on appeal. (Code Civ. Proc., § 906; *Prakashpalan v. Engstrom, Lipscomb & Lack* (2014) 223 Cal.App.4th 1105, 1121.)

43

communication are "outdated, intrusive, and counter-productive" compared to "modern, superior" methods like Internet communication. Defendants further argue although plaintiff is asserting his constitutional rights, defendants also are asserting their constitutional rights of free speech and protection from uncompensated takings, making the balance of constitutional harms "in favor of [defendants], or at the very least . . . a wash."

The trial court found, "[I]nsufficient/no evidence that Plaintiff's activities are causing a substantial disruption." *Pruneyard* itself deemed " ' "the impairment of [the shopping center owner's] interest . . . largely theoretical," ' " given that the owner " ' "has fully opened his property to the public. . . ." ' [Citation.]" (See *Pruneyard*, *supra*, 23 Cal.3d at p. 910.) As previously noted, the United States Supreme Court rejected takings and free speech challenges to *Pruneyard*. The trial court did not abuse its discretion in concluding the balance of harms favored plaintiff.

## E. Plaintiff Is Entitled to a Preliminary Injunction

To summarize, plaintiff has shown a likelihood of prevailing on the merits and the trial court has concluded the balance of harms favors him. Accordingly, plaintiff is entitled to a preliminary injunction barring defendants from enforcing the Centers' total ban on expressive activity against him. Consistent with *Pruneyard*, however, such an injunction does not prevent defendants from imposing appropriate time, place, and manner rules for expressive activity in the Centers' common areas.

Plaintiff is also entitled to a preliminary injunction barring defendants from enforcing the permit requirement under section 34 of the Centers' code of conduct. This is not to say the Centers cannot have a permitting requirement. Such a requirement,

however, must be guided by objective criteria limiting the Centers' discretion. We express no opinion what criteria would satisfy constitutional requirements.

## DISPOSITION

The order denying plaintiff's request for a preliminary injunction is reversed. The trial court is directed to grant a preliminary injunction enjoining defendants from enforcing defendants' total ban on expressive activity at the Centers and the permit requirement of section 34 of the Centers' code of conduct. The injunction would not preclude defendants from imposing appropriate time, place, and manner rules as to expressive activity. Plaintiff is awarded his costs on appeal.

CERTIFIED FOR PUBLICATION.


BENDIX, J.


We concur:



ROTHSCHILD, P. J.



WEINGART, J.


45